*16*

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2457 | **DATE** | 11/30/2000 |
| **CASE TITLE** | Rev. Robert Ellis vs. City of Chicago, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   The individual defendants' motion to dismiss, as well as the City's, are granted and this action is dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | **DEC 0 1 2000** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 18 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | |
| | | EO-7 | | |
| rs | courtroom deputy's initials | 00 NOV 30 PM 12: 03 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REV. ROBERT ELLIS,                          )
                                            )
        Plaintiff,                          )
                                            )          No.   2000 C 2457
        v.                                  )
                                            )          Judge   Blanche M. Manning
CITY OF CHICAGO, a municipal corporation,)
JOSEPH KIPKA and PEGGY SAUER,               )
                                            )
        Defendants.                         )

**DOCKETED**

DEC 0 1 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Ellis filed this suit in the Circuit Court of Cook County, Illinois, on

October 4, 1999. An amended complaint filed March 8, 2000 (referred to as the Complaint)

named as defendants the City of Chicago, Chicago police officers Joseph Kipka and Peggy Sauer,

and "other unknown and unnamed defendants."[1] The amended complaint contained new claims

under the Constitution and laws of the United States. After receiving the complaint on March 23,

2000, the defendants removed the case to this court on April 24, 2000, as permitted by 28

U.S.C. §§ 1441 and 1446. Ellis has not objected to removal.

Federal jurisdiction is proper. Although it appears that the Complaint is primarily based on

the Illinois Restoration of Religious Freedom Act (IRFRA), Ellis also claims that defendants have

violated his rights under the First and Fourteenth Amendments and Article II, section 4, of the

Constitution.[2] Ellis asserts a claim under 42 U.S.C. § 1983 in that defendants, acting under color

of state law, are alleged to have interfered with plaintiff's freedom of speech and religion, and

alleges a conspiracy in violation of 42 U.S.C. § 1985.

---

[1] The Complaint alleges at page 11 that "Unless otherwise indicated all counts involve Detective Rockaitis and damages are sought individually, and in his official capacity, in all counts." The court assumes that this allegation was included in error in copying pleadings in another case. In *Ellis v. Rockaitis*, 2000 C 0638, dismissed without prejudice by Judge Coar on June 30, 2000, Ellis named as defendant Randall Rockaitis, a detective employed by Country Club Hills, Illinois. Rockaitis has no apparent relationship to the allegations of the Complaint.

[2] Article II, § 4 of the Constitution states: "The President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors." The relevance of this to Ellis's claims escapes the court.

On June 2, 2000, the City of Chicago and the individual defendants filed separate motions to dismiss. Ellis was given until June 23 to respond. On July 21, 2000, Ellis informed the court that he is confined in the Cook County Jail, and asked for a 60-day continuance and an order granting him daily access to Jail's law library. The court did not rule on the motion until October 10, 2000, well past the 60 days Ellis had requested. Ellis was given until October 27, 2000, to respond. Ellis has not responded, and the court will rule without the benefit of his views.

## I.  THE COMPLAINT

The allegations of the complaint are, to put it mildly, unusual. Ellis identifies himself as "Bishop of Beta, Corporation Sole, and Commissioner and Diocesan of Beta United States Railroad Corporation and Police Department, a federally recognized railroad, and an integrated part and auxiliary of his ministry, and as such a direct expression of his sincerely held religious beliefs." Ellis alleges that a Mr. Franchone Ivy, his agent, was arrested by the Chicago police on March 3, 1998, and charged with unlawful use of a weapon and false personation of a peace officer. On March 26, 1998, the charges against Ivy were dismissed on a finding of no probable cause. According to the complaint, there was no probable cause to arrest Ivy.

It appears that when he was arrested, Ivy had claimed that he was a railroad policeman employed by plaintiff's "Beta United States Railroad Corporation and Police Department." Unwilling to credit the existence of this railroad or its police department, the Chicago Police Department published an internal "Security Alert" dated March 24, 1998, a copy of which Ellis has included in his complaint.

The "Security Alert" stated that "the Beta Railroad Police Department is in fact part of an on going [sic] criminal enterprise" currently under investigation. The "Security Alert" stated "[t]his criminal group gives individuals Badges, photo identification cards, and fraudulent documents that appear to be miniatures of City of Chicago Gun Registration Cards. The materials that they provide in this scheme are high quality and examples of them are contained in this bulletin." In large, bold letters the "Security Alert" warned: "CAUTION SHOULD BE

EXERCISED IN ALL CONTACTS INVOLVING SUBJECTS IN POSSESSION OF THESE TYPES OF IDENTIFICATION." The "Security Alert" stated that information concerning "these or other suspected groups" should be sent to defendants Kipka and Sauer.

Plaintiff alleges that the "Security Alert" was circulated among Chicago police personnel and to other police agencies and was available to the general public. Ellis says that he "did not immediately find out about its existence," but does not say when he learned of it.

It appears that Ellis is complaining of two sets of acts, seizing Ivy's identification as a police officer employed by the "Beta United States Railroad" and publishing the "Security Alert." He claims that he was injured in the following ways, which can charitably be characterized as imaginative. The court has culled the following list from the rambling and argumentative complaint. By seizing Ivy's "Beta Police ID and Badge," defendants (presumably unnamed police officers)

1.    "violated Plaintiff's sincerely held religious beliefs and practices, as these credentials were issued to Plaintiff's agent as part of Plaintiff's religious auxiliary Beta United States Railroad, a fully integrated part of Plaintiff's Ministry, and as such substantially burdens Plaintiff's free exercise of religion, and violates RFRA."

2.    By "intimidation and force" "interfered with Plaintiff's right to accept and hold his office under the United States and from Discharging his duties as a peace officer of Beta U.S. Railroad, an office to which Plaintiff is Legally installed per federal and state statute and further conspired with Others to deprive Plaintiff of his property under color of state law in violation of 42 U.S.C. § 1985."

3.    Defendants "have effected a taking of private property by a state actor with the intent an goal of preventing Plaintiff from the natural and proper enjoyment of said property, thus effecting a deprivation of his property interests in said property as Diocesan and Bishop and depriving him of his religious liberty and free exercise thereof in violation of the [sic] 42 U.S.C. § 1981.

Promulgation of the "Security Alert" allegedly injured Ellis in the following ways:

1.    By warning police officers, who presumably are armed, to exercise caution in dealing with persons carrying such identification, the "Security Alert" "put Plaintiff and his agents in jeopardy of life and limb." Going even further, Ellis characterizes it as an "attempted assassination."

2.    The "Security Alert" put Ellis and his agents in jeopardy of arrest and illegal seizures.

3.    The "Security Alert" violated Ellis's right of free exercise of his religion. He alleges defendants have "disseminated false and malicious information harmful to Plaintiff, which substantially burdened his free exercise of religion, and drastically interfered therewith."

3

Defendants' actions "have caused mental stress in that they have attacked Plaintiff's fundamental right to engage in his sincerely held religious beliefs and pursuits free of hindrance and interference from the City of Chicago and its agents.

4.    Defendants have effected an establishment of religion in contravention of the Establishment Clause of the First Amendment.

Ellis alleges that he and most of his agents are black, while defendants are white, and "the actions of Defendant's [sic] who are white, is [sic] not only anti-religious, but also Anti-Black-male, and very dangerous." Ellis asks for $200,000 in compensatory damages, $1,000,000 in punitive damages, and a declaratory judgment that 720 ILCS 5/32-5, 5.1 and 5.2 (relating to personation of an attorney, judicial, or governmental official, personation of a peace officer and aggravated personation of a peace officer) are unconstitutional, both facially and as applied to him.

Ellis has attached as exhibits to his complaint the following unnumbered exhibits:

(1)  The text of IRFRA;

(2   A certified statement of the Clerk of the Circuit Court of Cook County dated May 3, 1999, showing the dismissal of charges against Ivy on March 26, 1998;

(3) A letter dated May 9, 1997, from the Secretary of State of Delaware stating that as of May 8, 1997, Northern International Railroad Corporation and Beta United States Railroad Corporation and Police Department were corporations in good standing;

(4)  A letter dated September 1, 1994 from the Delaware Department of Public Safety regarding the commissioning of railroad police as constables;

(5)  A letter from President Clinton, apparently responding to Ellis's expressed concern about the threat of terrorism;

(6)  A certification by the Secretary of State of Illinois that an affidavit of Beta United States Railroad Corporation And Police has been recorded in the Religious Book #2.

(6)   Letter to Ellis dated September 15, 1999 from an attorney at the Federal Railroad Administration, United States Department of Transportation, stating that, on the basis of facts furnished by Ellis, the Beta U.S. Railroad fits FRA criteria for an "insular tourist railroad" and that the FRA would not exercise jurisdiction over it at its new location in Country Club Hills.

(7)  Letter to Ellis dated September 8, 1995, from the same FRA attorney, similarly stating that, based on facts furnished by Ellis, the Beta U.S. Railroad is an "insular" railroad" not subject to FRA safety jurisdiction.

## CHALLENGE TO ILLINOIS CRIMINAL IMPERSONATION STATUTES

Before turning to the defendants' motions, which do not address this issue, the court briefly disposes of Ellis's claim that 720 ILCS 5/32-5, 5.1 and 5.2 are unconstitutional. It is not clear precisely what Ellis's argument is, but the court seriously doubts that either Ellis's First Amendment right to practice his religion or his First Amendment right of free speech permit him to claim to be a peace officer when the state does not recognize him as such. A person becomes a peace officer through a grant of power and authority, directly or indirectly, from the state. It is not an office a clergyman may confer on himself to further his ministry. Nor, generally speaking, does the First Amendment forbid the state from punishing false or deceptive speech. *Schneider v. State of New Jersey*, 308 U.S. 147, 164 (1939) (while municipality may not prohibit charitable solicitations, "[f]rauds may be denounced as offenses and punished by law"). *See also State v. McLamb*, 188 Ariz. 1, 6-7, 932 P.2d 266, 271-72 (Ariz. Ct. App. 1996), *cert. denied*, 522 U.S. 814 (1997) (upholding ordinance forbidding unauthorized wearing of a policeman's badge or insignia).

This court will decline to exercise its jurisdiction to rule on the constitutionality of these statutes. Not only are defendants not proper parties to respond to such a challenge, the matter is potentially before the Illinois courts as Ellis is presently appealing his own conviction for impersonating a peace officer.[3/]

Ellis was arrested after showing a badge identifying him as "Commissioner, BETA University Police." Ellis initially persuaded the trial court to dismiss the charge, because 720 ILCS 5/32-5.1 requires that the defendant have impersonated a peace officer of "any jurisdiction," and "Beta Christian University" was neither a duly constituted university nor a governmental body. *People v. Ellis*, 296 Ill.App.3d 862, 863-64, 696 N.E.2d 1, 2 (1st Dist. 1998), leave to appeal

---

[3/] Although Ellis's conviction was not mentioned in the complaint, the court may take judicial notice of matters of public record in ruling on a motion to dismiss. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

denied, 183 Ill.2d 578, 712 N.E.2d 820 (1999), *cert. denied*, 120 S.Ct. 1684, 146 L.Ed.2d 491 (April 17, 2000).

The Illinois Appellate Court reversed and remanded, holding that the intent of the statute was to forbid fraudulent assumption or exercise of police powers, and so applied to impersonation of an officer of a fictitious jurisdiction. *Id.*, 296 Ill.App.3d at 865-66, 696 N.E.2d at 2-3. On remand, Ellis was convicted on May 12, 2000.[4/] This information casts considerable light on why this action was brought on the basis of a 1998 internal police advisory that caused Ellis no tangible harm.

In view of Ellis's pending criminal appeal, this court will abstain from addressing the constitutionality of the statute under which he was convicted. Under the so-called *Younger* doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, federal courts will abstain in declaratory judgment actions brought by defendants challenging the constitutionality of the state law under which they are being prosecuted. This restraint is a result not of limited power, but from considerations of federalism and comity -- "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. According to the Court of Appeals, "the *Younger* doctrine has come to mean that absent unusual circumstances, a federal court must refrain from entertaining injunctive relief which might interfere with the officers or judicial process of state courts and administrative agencies when important state interests are involved." *Barichello v. McDonald*, 98 F.3d 948, 954 (7th Cir. 1996). Both *Younger* itself and its companion case, *Samuels v. Mackell*, 401 U.S. 66 (1971), noted that a suit for declaratory relief raises the same problem as a suit for injunctive relief: that a state court is being second-guessed by a federal court in parallel proceedings. Ellis can raise his constitutional arguments before the Illinois courts on appeal, and, if that fails, in a federal habeas corpus petition. The court will not consider them in this suit.

---

[4/] *United States ex rel. Ellis v. Walter*, 2000 C 6575 (Andersen, J.)(habeas petition dismissed without prejudice October 30, 2000 for failure to exhaust state court remedies).

## II. STANDARDS FOR RULING ON A MOTION TO DISMISS

A motion to dismiss tests the complaint according to the applicable law. A motion to dismiss should not be granted unless the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding a motion to dismiss, we assume that the alleged facts are true and draw every reasonable inference in the plaintiff's favor. *LeBlang Motors, Inc. v. Subaru of America, Inc.*, 148 F.3d 680, 690 (7th Cir. 1998). A pro se complaint is held to less stringent standards than a complaint drafted by an attorney and is to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). Nevertheless, "though the Supreme Court has opined that a complaint should not be dismissed for failure to state a claim unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' [*Conley, supra,*] that opinion [*Conley*] is not a mandate to countenance balderdash." *Jennings v. Emry*, 910 F.2d 1434, 1441 (7th Cir. 1990).

## III. THE CITY'S MOTION TO DISMISS

### A. Federal Claims

The City's counsel has more than adequately sorted through the possible claims raised in the Complaint. Separating out federal from state-law claims, the court agrees that Ellis has not alleged a claim under 42 U.S.C. § 1981, which states in relevant part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens....
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a)-(c). A claim under § 1981 must allege that: (1) plaintiff is a member of a racial minority; (2) the defendants had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making

and enforcing of a contract). *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Ellis has alleged element (1), perhaps has alleged element (2), but has completely failed to allege element (3). Nothing alleged in the Complaint relates to the making or enforcing of a contract.

The court also agrees that Ellis has not stated a claim against the City under 42 U.S.C. § 1983. The court will separately consider whether the individual defendants infringed Ellis's federal or constitutional rights in addressing their motion to dismiss. But even if the individual defendants violated Ellis's rights, Ellis has not alleged that their acts resulted from any kind of official custom or policy, a prerequisite for municipal liability under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dept. of Social Services*, 436 U.S. 658, 690-91 (1978); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 478-79 (7th Cir. 1997). There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Again, a critical element of any claim under § 1983 is wholly lacking.

Any claim of conspiracy, whether under 42 U.S.C. § 1983 or 42 U.S.C. § 1985, also necessarily fails. While the court has reservations about the "intra-corporate conspiracy doctrine" as applied to conspiracies between agents of the same corporate entity, e.g., police officers of the same municipality, it is clear that a corporate entity, whether a business corporation or a municipality, cannot conspire with its own agents. A corporate entity can only act through agents; if it were treated as a separate "person" for purposes of conspiracy, every act of the corporate entity would become a "conspiracy" between the corporate entity and the agent that acted on its behalf. The effect, of course, would be that municipalities would be vicariously liable for all constitutional torts of their agents, precisely the *respondeat superior* liability foreclosed by *Monell*. *Cf. Albiero v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir. 1997)("a municipality acts only through agents, and that these agents have agreed (= 'conspired') on a course of action does not present a constitutional problem").

## B. State-Law Claims

While all federal claims under § 1983 arising in Illinois borrow Illinois' two-year statute of limitations for personal injury actions, *Kelly v. City of Chicago*, 4 F.3d 509, 510 (7th Cir. 1993), a federal court applies to state-law claims the same limitations period a state court would apply. *See, e.g., Harrell v. Sheahan*, 937 F.Supp. 754 (N.D. 1996)(Aspen, J.)(dismissing as time-barred state-law claims, but not § 1983 claims). The City points out that the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) provides that "[n]o civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101.

Applying this limitations period, the "Security Alert" was allegedly published in March of 1998. To the extent IRFRA applies (and the City concedes it applies retroactively), the city contends that Ellis's claim would have accrued no later than the effective date of IRFRA, July 1, 1998. This action was commenced October 4, 1999, well over a year later, and is untimely unless Ellis's delay in bringing it is excused.

Ellis says that he "did not immediately find out about [the "Security Alert's"] existence," but does not say when he learned of it. Illinois follows a "discovery rule" in tort cases; an action does not accrue until the plaintiff knew or should have known of the facts giving rise to his claim. *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 414-15, 430 N.E.2d 976, 979-80 (1981); *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656, 671-72 (1969); *Schweihs v. Burdick*, 96 F.3d 917, 920-21 (7th Cir. 1996). Had Ellis pleaded that he learned of the "Security Alert" within a year of the commencement of this action, the court, which must accept the allegations of the complaint as true, could not find these claims untimely. But as Ellis was vague as to when he learned of defendants' actions and has not responded to defendants' motions, the court will not assume that Ellis has exercised a diligence that he has not alleged. The court finds that any state-law claims against either the City or the individual defendants are time-barred.

The court further finds that the substantive claims are meritless. The City correctly points out that Ellis may not sue it for defamation under state law. 745 ILCS 10/2-107. Furthermore, the "Security Alert" connects the purported railroads, not Ellis, with criminal activity, and in fact does not mention Ellis's name or identify him. As the supposed railroads are (or were) corporations, according to the exhibits attached to the complaint, they, not Ellis, would have the right to sue for damage to their reputations or business. As discussed below, Ellis's claim that the "Security Alert" violated IRFRA is frivolous. Finally, Ellis has no claim in the nature of false arrest, abuse of process or malicious prosecution based on any supposed invasion of Mr. Ivy's rights, since such claims would be personal to Mr Ivy. The City's motion to dismiss is granted as to all claims.

## IV. THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

### A. Rule 8

Defendants Kipka and Sauer contend that the Complaint violates Rule 8, Fed.R.Civ.P, which requires a complaint to include a "short, plain statement of the claim" and that "each averment of a pleading shall be simple concise, and direct." While the court agrees that the Complaint does not comply with Rule 8, it was initially filed in state court, and it is only through defendants' removing it that the Complaint became subject to the Federal Rules. If defendants had moved for a more definite statement under Rule 12(e), the court would have granted it. But since the defendants have apparently found the Complaint intelligible enough to compose their motion to dismiss, the court will address the motion on the merits, rather than dismiss the complaint with leave to replead.

### B. Federal Claims

To be liable under § 1983, a defendant must have personally caused or participated in the alleged constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000); *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), *cert. denied*, 519 U.S. 1055

(1997). Defendants Kipka and Sauer point out that Ellis has not alleged that they had any personal involvement in Ivy's arrest, and very little in the incident of the "Security Alert." Their names were given as contact persons in the "Security Alert." However, Ellis did allege that "all Defendants published [the "Security Alert"], and "caused it to be circulated among Chicago Police Personnel and also among other police agencies." Construing the complaint liberally and in Ellis's favor, as the court must do at this stage, if the "Security Alert" violated Ellis's constitutional rights, Ellis has stated a claim against the individual defendants.

The court is satisfied that the "Security Alert" did not deprive Ellis of any constitutionally protected right. Ellis appears to take the position that because the defendants stated in the "Security Alert" that the "Beta Railroad Police Department" is part of a criminal enterprise, and the "Beta Railroad Police Department" is an adjunct of Ellis's church, impugning the power or authority of Ellis or his followers as railroad policemen somehow infringes Ellis's freedom to practice his religion.

This is as absurd as it sounds. The state may legitimately burden the free exercise of religion through neutral laws of general application that are not enacted for the purpose of burdening religious practices. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *Employment Division, Department Of Human Resources Of Oregon v. Smith*, 494 U.S. 872 (1990). It follows that such laws may be enforced against clergy and religious organizations. *See, e.g., United States v. Indianapolis Baptist Temple*, 224 F.3d 627 (7th Cir. 2000)(church liable for federal employment taxes); *United States v. Lilly*, 37 F.3d 1222 (7th Cir. 1994)(pastor who misused invested funds guilty of securities fraud). And if such laws may be enforced without infringing First Amendment rights, suspected violations may be investigated without infringing them, either.

The Illinois statute forbidding impersonation of a peace officer is a neutral law of general application that undoubtedly furthers a compelling state interest. Here, the police were evidently investigating the possibility that Ellis's railroad was a hoax for illegal purposes. The state of Illinois permits railroads to hire railroad police to protect their property, and such railroad police

11

officers automatically have the power and authority of municipal police.[5/] They presumably have the same rights as municipal policemen to buy and carry guns, a right of definite interest to criminals. No doubt the Chicago police were interested in the emergence of a new railroad in Chicago's south suburbs that seemed to have policemen but no other visible appurtenances of a railroad.[6/]

The "Security Alert" did not interfere with the right of Ellis (or anyone else) to worship, preach, teach, or minister as he pleases. As far as can be determined from the complaint, the "Security Alert" had no effect on Ellis at all. His "agent" Ivy was arrested before the "Security Alert" was issued, and Ellis does not allege that he or any other "agent" was bothered thereafter by anyone by reason of the "Security Alert." In any event, the court knows of no authority holding that operating a railroad, pretending to operate one, acting as a railroad policeman or pretending to act as one constitute the exercise of religion under the First Amendment.

It is even more preposterous to assert that an internal police bulletin stating that Ellis's "railroad police department" was a subject of criminal investigation "put Plaintiff and his agents in jeopardy of life and limb." The "Security Alert" stated only that persons carrying identification as railroad policemen employed by the Beta Railroad Police Department or Northern International Police Department should be treated with caution. This was certainly appropriate inasmuch as these purported railroad policemen could be carrying guns in support of their supposed police powers. Such a statement cannot be construed as an incitement to attack Ellis, or to disregard his civil rights.

---

[5/] 610 ILCS 80/2 provides:

In the policing of its properties any railroad may provide for the appointment and maintenance of such police force as it may find necessary and practicable to aid and supplement the police forces of any municipality in the protection of its property and the protection of the persons and property of its passengers and employees, or otherwise in furtherance of the purposes for which such railroad was organized. While engaged in the conduct of their employment, the members of such railroad police force have and may exercise like police powers as those conferred upon the police of cities.

[6/] Ellis claims that by virtue of 610 ILCS 80/2 he and his agents are "fully commissioned Peace Officers able to carry firearms." This presumes, however, that under Illinois law Ellis's operation qualifies as a "railroad." The existence of a corporation with the word "railroad" in its name does not prove the existence of a railroad.

Ellis asserts that the defendants have interfered "with his right ... to accept and hold his office under the United States ...." Nothing in the Complaint supports Ellis's claim to be a federal officer. Under 49 U.S.C. § 28101, railroad police officers, who are *also* certified or commissioned as police officers under state law, may act outside the state in which they are commissioned. Assuming that the state of Illinois recognizes Ellis as a railroad policeman, this provision does not transmute him into a federal officer.[2/]

Finally, even if the "Security Alert" were defamatory, defamation is not a deprivation of liberty within the meaning of the due process clause and hence not actionable under § 1983. *Paul v. Davis*, 424 U.S. 693 (1976); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987).

## C. State-Law Claims

As discussed above, any state-law claims against the individual defendants are barred by the one-year limitations period of the Tort Immunity Act. Even if all claims were not time-barred, the court sees no viable claim in the Complaint. The Complaint does not link the individual defendants to Ivy's allegedly wrongful arrest or the seizure of Ivy's identification, and in any event Ellis has no right to sue for Ivy's injury.

For the reason the court rejected Ellis's First Amendment claim, the court must reject any claim under IRFRA: the publication of the "Security Alert" did not burden Ellis's exercise of his religion. Not only do the operation of a railroad and the maintenance of a railroad police department lie far outside any accepted definition of religious activity, the Complaint does not allege that the "Security Alert" had any effect on Ellis whatever. True, Ellis claims he was harmed, but conclusory allegations unsupported by factual assertions are not enough even under the liberal standard of Rule 12(b)(6). *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995).

---

[2/] Ellis was informed of this on at least two occasions when he attempted to remove state-court actions against him to federal court by claiming to be a federal officer. *See People of the State of Illinois v. Robert Ellis*, No. 98 C 4661 (N.D. Ill.) (remand order entered October 16, 1998); *People of the State of Illinois v. Robert Ellis*, No. 98 C 4828 (N.D.Ill.)(remand order entered September 24, 1998).

A defamation claim would not require specific allegations of injury where the alleged defamatory language "impute[s] the commission of a criminal offense." *Mittelman v. Witous*, 135 Ill.2d 220, 238, 552 N.E.2d 973, 982 (1989). But that claim belongs to the entities identified as involved in criminal activity, the purported railroads, rather than Ellis. In short, this is an entirely frivolous suit. The individual defendants' motion to dismiss, as well as the City's, are granted and this action is dismissed with prejudice.

Ellis may appeal this dismissal by filing a notice of appeal within thirty days of the entry of judgment. Ellis is presently incarcerated, so any appeal will be subject to the provisions of the Prison Litigation Reform Act. Ellis is advised that pursuant to 28 U.S.C. § 1915(b)(1) he may not appeal this decision without payment of the $105 appellate filing fee. He is further advised that because this suit is frivolous, the court will consider any appeal to be taken in bad faith, and will deny leave to proceed in forma pauperis. 28 U.S.C. § 1915(a)(3). This means that, unless the Court of Appeals disagrees with this assessment, Ellis not only will have to pay the filing fee, he will have to prepay it in full.

IT IS SO ORDERED.

Blanche M. Manning, Judge
United States District Court

DATED: NOV 3 0 2000

14